SIDNEY MINER *vs.* THE NORWICH & WORCESTER RAILROAD
COMPANY.

A bill of lading was as follows:—"Received of the Penn. Coal Co. on board
schooner Goodspeed, of which I am master, 152 tons of coal, to be delivered to
the N. & W. Railroad Co. or order at *N*, they paying freight for the same at
$1.40 per ton; account *J. P. S.*, Fitchburgh." Held, that under it the railroad
company was not a consignee of the coal, and was not liable for damages in the
nature of demurrage.

Whether the railroad company, by receiving the coal, became liable for the
freight:—*Quere.*

CASE, for damages in the nature of demurrage. Tried to
the jury in the superior court, on the general issue, before
*Park, J.*

On the trial the plaintiff offered evidence to prove that the
schooner J. Goodspeed, on the 14th of September, 1863,
received on board a cargo of coal, for which the master signed
the following bill of lading:—" Received of the Pennsylvania
Coal Company, on board the schooner J. Goodspeed, whereof
I am master, one hundred fifty-two 19-20ths tons steamer coal,
which I promise to deliver to the Norwich & Worcester R. R.
Co. or order, at Norwich, Ct., they paying freight for the same
at $1.40 per gross ton; account James P. Sabin, Fitchburgh;
dangers of the sea excepted. Dated at Port Ewen, this 14th
day of Sept., 1863. Signed in duplicate. N. RICHARDS;"

that the schooner with her cargo sailed for Norwich, where she arrived on the 18th of September, when the captain reported himself to the defendants as ready for discharging; that the vessel could have been discharged by the morning of the 21st, but was not discharged until the morning of the 26th, and that such detention was unreasonable. The defendants offered evidence to show that the coal belonged to James P. Sabin named in the bill of lading, and that they had no interest in it and no knowledge of its shipment until they received the bill of lading; that they were common carriers between Norwich and Worcester, at which latter place their road connected with a similar road running to Fitchburgh; that they had two wharves and suitable machinery for discharging cargoes of coal from vessels into cars to be transported over their road; that at the time of the arrival of the schooner at Norwich there were eight other vessels with cargoes of coal lying at the wharves, which had arrived previously; that the work of discharging the vessels in the order of their arrival was vigorously prosecuted, and on the 25th of September the work of discharging the schooner was commenced, and finished on the 26th.

The plaintiff claimed, and requested the court to instruct the jury, that by the terms of the bill of lading the defendants were consignees of the cargo, and as such were bound to receive it and discharge it within a reasonable time, and were liable for damages in the nature of demurrage for any unreasonable detention. The defendants requested the court to instruct the jury that, upon the bill of lading, the defendants were not consignees of the cargo, so as to render them liable in any other capacity than as common carriers, and that therefore the action could not be sustained, and a verdict should be rendered for the defendants. The court charged the jury in accordance with the request of the defendants, and instructed them to return a verdict in their favor.

The jury returned a verdict for the defendants, and the plaintiff moved for a new trial.

*Hovey* and *Pratt*, in support of the motion, cited Abbott on

Shipping, 323, 420 ; 1 Parsons' Mar. Law, 219 ; *Lawrence* v. *Minturn,* 17 Howard, 100 ; *Hinsdell* v. *Weed,* 5 Denio, 172; *Canfield* v. *Northern R. R. Co.,* 18 Barb., 586; *Scaife* v. *Tobin,* 3 Barn. & Adol., 523 ; *Dougal* v. *Kemble,* 3 Bing., 383.

*Wait* and *Halsey,* contra, cited Abbott on Shipping, 335 ; 1 Parsons' Mar. Law, 220 ; Angell on Carriers, § 506 ; Story on Agency, § 395 ; 12 Petersdorf Ab., 14 ; *Evans* v. *Marlett,* 1 Ld. Raym., 271 ; *S. C.,* 12 Mod., 156 ; *Sargent* v. *Morris,* 3 Barn. & Ald., 277 ; *Amos* v. *Temperley,* 8 Mees. & Wels., 798 ; *Drew* v. *Bird,* 1 Mood. & Malk., 156; *Grove* v. *Brien,* 8 Howard, 429 ; *Lawrence* v. *Minturn,* 17 id., 100.

DUTTON, J. The plaintiff, to show that the defendants were consignees, and as such liable to demurrage, offered in evidence the following bill of lading:—

"Received of the Pennsylvania Coal Co., on board of the schooner J. Goodspeed, whereof I am master, 152 19-20ths tons steamer coal, which I promise to deliver to the Norwich and Worcester R. R. Co., or order, at Norwich, Ct., they paying freight for the same at $1.40 per gross ton; account James P. Sabin, Fitchburgh ; dangers of the seas excepted. Dated at Port Ewen this 14th day of September, 1863. Signed in duplicate. N. RICHARDS."

To this, as evidence to show that the defendants were consignees, the defendants objected, and the court excluded it.

We think the ruling was right. The railroad company in receiving this bill of lading would naturally infer, and would have a right to infer, that the cargo of coal was sent by the coal company to Sabin. The schooner was to bring it on its way to Norwich, and the railroad company was to forward it in its business as a common carrier to the termination of its road. In doing this the company would assume no responsibility except as a common carrier. Sabin, who was ultimately to receive the coal, apparently as owner, would be regarded as the consignee.

This view of the case is fully sustained by the authorities cited by the defendants' counsel. They show that wherever

goods are to be delivered to one person for or on account of. or for the use of another, the latter is to be regarded as the consignee.

There would have been much more plausibility in the plaintiff's claim if it had been for freight instead of demurrage. Some decisions appear to favor such a doctrine. The bill of lading in this case requires the master of the vessel to deliver the coal " to the railroad company or order, they paying freight;" from which, if nothing further appeared, a promise by the railroad company might perhaps be inferred from its acceptance of the coal for transmission. But no reference is made in the bill of lading to demurrage from which a promise to pay for it could be inferred. In a late English case, *Amos* v. *Temperley*, 8 Mees. & Wels., 798, where the bill of lading was very much like that in this case, it was held that an action even for the freight could not be sustained against the party who was to receive the goods for another person. There, by the bill of lading, coal was deliverable " to the defendant for the London Gas Co., or to his assignees, he or they paying freight.". Parke, B., in giving the opinion of the court says:— " Here the defendant is on the face of the bill of lading a mere agent to receive the goods, the London Gas Company being the consignees;" * * " and the promise to be inferred from the receipt of the goods under such a bill of lading is *prima facie* a promise by the defendant, as agent of the company, to pay the freight on their account, and not a promise to be personally responsible for it." It is unnecessary for the decision of this case to determine whether we should on the same question go the full length of that case, but it is a very strong authority to show that the defendants in this case are not consignees, and that a suit for demurrage can not be sustained against them.

A new trial is not advised.

In this opinion the other judges concurred.